```
IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES FULLWOOD,                )
                               )
              Plaintiff,       )      9:99CV1586
                               )
       v.                      )
                               )
ROBERT N. VOSPER, JR., Inmate  )      MEMORANDUM OPINION
Grievance Program Supervisor;  )
and LT. O'ROURKE,              )
                               )
              Defendants.      )
_____)
```

This matter is before the Court on defendants' motion for summary judgment (Filing No. 112), plaintiff's response in opposition (Filing No. 119), and plaintiff's filing, labeled as an affidavit, which is actually a series of evidentiary submissions (Filing No. 120). The Court notes that neither plaintiff's response nor plaintiff's affidavit were properly attested to. Further, the filing labeled as an affidavit was out of time, and plaintiff's response and affidavit will not be considered. Having carefully reviewed the motion and the applicable law, the Court will grant defendants' motion.

### I.  Summary Judgment Standard

On a motion for summary judgment, all reasonable factual inferences must be drawn in favor of the non-moving party. *See, e.g.*, *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003)(citing *Anderson,* 477 U.S. at 255). However, to survive a motion for summary judgment, "the nonmoving party must come forward with 'specific facts showing that there is a genuine

issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(emphasis omitted)(quoting *Fed. R. Civ. P. 56(e)*)(citation omitted). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)(citation omitted). Thus, "statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar* Coll., 196 F.3d 435, 452 (2d Cir. 1999)(citations omitted), *cert. denied*, 530 U.S. 1242 (2000).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy [its] burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Vann v. City of New York,* 72 F.3d 1040, 1048 (2d Cir. 1995)(*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)). A party "moving for summary judgment must prevail if the [non-movant] fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo,* 100 F.3d 253, 258 (2d Cir. 1996)(*citing Anderson,* 477 U.S. at 247-48). While the submissions of pro se litigants are liberally construed, *see, e.g., Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994), the

fact that the plaintiff is "proceeding pro se does not otherwise relieve [him] from the usual requirements of summary judgment." *Fitzpatrick v. New York Cornell Hosp.,* 2002 U.S. Dist. LEXIS 25166, 2003 WL 102853, at *5 (S.D.N.Y. Jan.9, 2003)(citing cases).

## II.  FACTS

Plaintiff James Fullwood ("Fullwood") brings this action alleging that the defendants retaliated against him because Fullwood had filed a grievance complaint against defendant Robert Vosper ("Vosper"), alleging that Vosper lacked the requisite minimum qualifications required for appointment to his position as Inmate Grievance Program Supervisor at Shawangunk Correctional Facility ("Shawangunk")(Complaint, ¶ 6).  Fullwood's grievance was filed on February 12, 1998 (Complaint, ¶ 6).  That same day, another inmate, Charles Dingle ("Dingle"), initiated an investigation into Fullwood's complaint in Dingle's role as an Inmate Grievance Resolution Committee ("IGRC") representative (Complaint, ¶ 7).

On February 17, 1998, Vosper filed impeachment charges against Dingle, placed Dingle on suspension and ordered Dingle to turn over Fullwood's grievance to him (Complaint, ¶ 8).  On February 22, 1998, Vosper completed his investigation of Fullwood's complaint and exonerated himself (Complaint, ¶ 9).

On February 25, 1998, Fullwood took documents to Vosper to be notarized (Fullwood Deposition 21:17-22:3). Vosper looked through the documents given to him by Fullwood and noticed that Fullwood had a copy of Vosper's investigative report into Fullwood's grievance complaint against Vosper (Fullwood Dep. 25:2-12). Vosper asked Fullwood how he came into possession of the report, and Fullwood said he obtained it through a Freedom of Information Law ("FOIL") request (Fullwood Deposition 21:17-22:3). Vosper knew this to be untrue because any FOIL request for the document would have had to come to Vosper, and Vosper had not received any such request. Therefore, Vosper issued Fullwood a misbehavior report ("MR") for allegedly violating rules 113.23 (for possession of contraband), 116.21 (distributing facility documents) and 107.20 (for lying).

Defendant O'Rourke ("O'Rourke") presided at Fullwood's subsequent Tier II disciplinary hearing. Fullwood was given written notice of his disciplinary hearing four days before the commencement of the hearing. Fullwood was allowed to present evidence at his hearing. In addition, all witnesses that Fullwood requested testified at the hearing. While O'Rourke did not make Directive 4040 a part of the record, he did allow Fullwood to read the provisions of 4040 into the record upon which he was relying. At the conclusion of the hearing, O'Rourke found Fullwood guilty of the charges of possession of contraband

and lying and not guilty of the charge of distribution of facility documents. O'Rourke sentenced Fullwood to thirty (30) days keeplock and deprived Fullwood of packages, commissary and telephone privileges for thirty (30) days. Fullwood acknowledged receipt of the Disciplinary Hearing Disposition Rendered form.

From March 11, 1998, to April 10, 1998, Fullwood served his thirty-day keeplock sentence in his own cell. During his keeplock, Fullwood was allowed one hour of recreation outside of his cell each day, two showers per week, and could obtain two books each day from the law library. Fullwood also was able to file grievances throughout his keeplock confinement. Though he could worship in his cell, Fullwood was not allowed to leave his cell to attend religious services during his keeplock confinement.

Fullwood appealed the sentence imposed by O'Rourke in a State Article 78 proceeding before Justice Bradley where Fullwood ultimately prevailed on the charge of possession of contraband, resulting in the annulment of Vosper's February 26, 1998, MR which was the basis for his thirty-day keeplock sentence. Justice Bradley did not address Fullwood's constitutional retaliation claim or the charge and conviction for lying.

### III.  DISCUSSION

**A.  Retaliation Claim**

    1.  The Legal Framework

An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983.  *Franco v. Kelly*, 854 F.2d 584, 589-90 (2d Cir. 1988).  A plaintiff alleging retaliatory punishment "bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff."  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).  The burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation.  *Id*. at 80.  The defendant can meet this burden by demonstrating that there is no dispute that the plaintiff "committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report."  *Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir.)(per curiam), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998); see also *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (holding that the defendants met their burden when "it was undisputed that [the plaintiff] had in fact committed the prohibited conduct").

2. Applying the Legal Framework to Fullwood's Allegations

    a. The Plaintiff's Burden

Fullwood alleges in his complaint that defendant Vosper retaliated against him for filing a grievance by charging him with a false MR that resulted in Fullwood's keeplock confinement in retaliation for his exercise of his constitutional right to file a grievance. The filing of grievances is a constitutionally protected activity. *Franco*, 854 F.2d at 589-90; *Young v. Calhoun*, 656 F.Supp. 970, 972-73 (S.D.N.Y. 1987). Fullwood has submitted evidence to support a claim under 42 U.S.C. § 1983 and met the first prong of his burden under *Graham*. *Graham*, 89 F.3d at 80.

With respect to the second prong of the *Graham* burden, the Court concludes that Fullwood has elicited sufficient evidence to create a genuine issue of material fact as to whether retaliation was a substantial factor in Vosper's decision to charge and punish him for the MR. The Second Circuit has held that temporal proximity of an allegedly retaliatory MR to a grievance may serve as circumstantial evidence of retaliation. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). Not only was the February 26th MR written shortly after Fullwood's February 12th grievance against Vosper, but the MR was issued by Vosper, who was the subject of Fullwood's February 12th grievance.

Fullwood's assertions gain additional support from the fact that the MR was annulled in a state court Article 78 proceeding.

At the disciplinary hearing, Fullwood asserted that he had the right to possess the investigative report under Directive 4040 because it was an investigation of his grievance. Vosper disagreed. Even if Fullwood had the right to possess the report, it does not change the fact that he lied about how he obtained the report.

      b.    Defendants' Burden

Once Fullwood has met his *Graham* burden, the burden shifts to the defendants to show that Fullwood would have been issued the MR even absent the retaliatory motivation. *Graham*, 89 F.3d at 80. The defendants can meet this burden by demonstrating that there is no dispute that the plaintiff "committed the most serious, if not all, of the prohibited conduct charged." *Hynes*, 143 F.3d at 657; see also *Lowrance*, 20 F.3d at 535 (holding that the defendants met their burden when "it was undisputed that [the plaintiff] had in fact committed the prohibited conduct").

Here, whether or not Fullwood committed the prohibited conduct of making a false statement and possessing contraband is not seriously in dispute. While Fullwood denies these charges, his deposition testimony and the Tier II hearing transcript contradict these denials. At the hearing, Fullwood acknowledged he had the investigative report in his possession and that he had

gotten it, not through FOIL, but from Dingle (Hearing Tr. pp. 12, 21; Fullwood Dep. 59:15-21). Fullwood acknowledged that Vosper found him in possession of the report (Hearing Tr. p. 25; Fullwood Dep. 25:2-12). Fullwood acknowledges he had possession of the contraband.

Vosper testified at the hearing that he gave a copy of the report to Sgt. Duffany for Dingle's use in Dingle's impeachment defense (Hearing Tr. p. 16). Vosper specifically answered "no" when asked whether the document request was a "part of a Freedom of Information Request" (Hearing Tr. p. 16). Further, Dingle testified that he obtained the investigative report through an assistance request (Hearing Tr. p. 20). Since the report was not obtained via FOIL, Fullwood lied when he told Vosper that he had obtained the report via FOIL. Thus, the evidence is sufficient to support a finding that the MR would have been issued even absent the retaliatory motivation as Fullwood committed the acts of lying and possessing contraband.

**B.   Due Process**

Despite the recognized limitations on their constitutional rights, inmates can invoke the Due Process Clause of the Fourteenth Amendment, which provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law[.]" *U.S. Const. amend. XIV, § 1.* To make such a claim under 42 U.S.C. § 1983 for an alleged violation of

procedural due process, the Court must find that, as the result of conduct performed by defendants under color of state law, Fullwood was deprived of life, liberty, or property without due process of law. *See Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). Since there is no dispute that defendants acted under color of state law, the Court must proceed to consider (1) whether Fullwood had a protected liberty interest in not being confined in keeplock for thirty days; and, if so, (2) whether the deprivation of that liberty interest occurred without due process of law. *Bedoya*, 91 F.3d at 351-52.

    1.    Protected Liberty Interest

The United States Supreme Court has held that, in order to demonstrate a deprivation of liberty with regard to disciplinary segregation for misconduct, a prisoner must demonstrate that the special disciplinary confinement imposed an "atypical and significant hardship" in relation to the ordinary incidents of prison life. *Sandin v. Conner,* 515 U.S. 472, 484 (1995). In the Second Circuit, decisions unanimously have held that keeplock of thirty days or less in New York prisons is not an "atypical or significant hardship" under Sandin. *Smart v. Goord*, 441 F. Supp. 2d 631, 640 (S.D.N.Y. 2006)(*citing Williams v. Keane*, 1997 U.S. Dist. LEXIS 12665, at *6 (S.D.N.Y. Aug. 25, 1997)(citing cases). In addition, "the loss of phone, package, and commissary privileges does not give rise to a protected

liberty interest under New York law." *Smart*, 441 F.3d at 640 (*citing Husbands v. McClellan*, 990 F. Supp. 214, 217 (W.D.N.Y. 1998). Fullwood's thirty-day keeplock confinement and loss of phone, package, and commissary privileges, where Fullwood fails to delineate "abnormal" conditions, is insufficient to qualify as an atypical and significant hardship.

    2.    Fullwood Recieved Process Due

Even if Fullwood's thirty-day keeplock confinement was sufficient to implicate his due process rights, the Court finds that he was provided the process due. "Prison inmate[s] ha[ve] no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). Rather, the Constitution only guarantees that prison inmates will "not . . . be deprived of a protected liberty interest without due process of law." *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988)(*quoting Freeman*, 808 F.2d at 951). As long as prison officials grant the inmate a hearing and an opportunity to be heard, the "filing of unfounded charges d[oes] not give rise to a per se constitutional violation actionable under section 1983." *Franco*, 854 F.2d at 587 (*quoting Freeman*, 808 F.2d at 953).

The key inquiry, in assessing an allegation that an inmate has been found guilty of false disciplinary charges, is

whether or not the prison has provided the inmate with the minimum procedural due process protections guaranteed by the Fourteenth Amendment.  *Id*.  An inmate charged with a violation must be given (1) advance written notice of the charges at least twenty-four (24) hours before the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the factfinders as to the evidence relied on for their decision, and the reasons for the prison committee's action.  *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974).

Fullwood was given written notice of the charges four days prior to the Tier II hearing over which defendant O'Rourke presided.  Fullwood appeared at the hearing and was given the opportunity to call witnesses, to question opposing witnesses and to testify on his own behalf.  At the conclusion of the hearing, Fullwood was given a written statement as to the evidence relied on by defendant O'Rourke in making his decision.  Thus, the due process provided to Fullwood meets or exceeds the minimum so that his constitutional rights were not violated.  Even if Fullwood's MR, authored by Vosper, was false, it does not equate to a constitutional violation under § 1983 and does not constitute a violation of Fullwood's constitutional rights under § 1983.

Once a court has decided that the procedural due process requirements have been met, its function is to determine

whether there is some evidence which supports the decision of the prison disciplinary board." *Freeman*, 808 F.2d at 954-55 (*citing Superintendent v. Hill*, 472 U.S. 445, 453-55 (1985)). "A court should not overturn a prison disciplinary board's finding of guilt if there is any evidence to support the board's conclusion." *Franco*, 854 F.2d at 588.

O'Rourke found Fullwood guilty of the charges of lying and possession of contraband. O'Rourke indicated that he relied upon the testimony of the witnesses. Fullwood has never denied that he had the Vosper investigation report in his possession or that he told Vosper that he received the report via FOIL. This report is contraband unless it was obtained through the proper channels, *i.e.,* via a FOIL request. Where the FOIL request for this document would have to go to Vosper, and where Vosper had never received any FOIL request for the report, O'Rourke's decision that Fullwood had lied and was in possession of contraband was supported by some evidence. Therefore, the Court will dismiss the due process claim because Fullwood's thirty-day keeplock confinement does not implicate a protected liberty interest and, even if it did, he received the process due and O'Rourke's decision was supported by some evidence.

**C.    Equal Protection**

Fullwood's next claim asserts that his keeplock confinement and O'Rourke's conduct of the Tier II hearing violated Fullwood's equal protection rights.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tx. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)(citation omitted).  The general rule is that a policy is presumed to be valid and will be sustained if the classification drawn by that policy is rationally related to a legitimate state interest.  *Id*. at 440.  One exception to that rule, however, is when a policy classifies by race, alienage, or national origin -- "these factors are so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy -- a view that those in the burdened class are not as worthy or deserving as others." *Id*.  For this reason, these policies are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest.  *Id*.  The essence of a cognizable equal protection claim includes a showing of "clear and

intentional discrimination." *Snowden v. Hughes*, 321 U.S. 1, 8 (1944)(internal quotation and citations omitted).

In the face of defendants' summary judgment motion, it was incumbent upon Fullwood to come forward with evidence which could support a claim that he was treated differently than other inmates, and that the difference in treatment could properly be attributed to his status as a member of an identified classification. Fullwood provides no evidence to support this assertion and fails to establish his prima facie case for a valid equal protection claim because he fails to identify a classification upon which the alleged different treatment was based. Fullwood not only fails to identify a protected classification, he fails to identify any classification. His complaint does not state a cognizable equal protection claim. Therefore, this claim will be dismissed.

**D.   Collateral Estoppel**

In his brief in reply to defendants' motion for summary judgment, Fullwood asserts that the state Article 78 proceeding is res judicata so as to estop the defendants from denying his claims on summary judgment. The MR report that led to Fullwood's keeplock confinement was annulled in the Article 78 proceeding.

The Article 78 proceeding only addressed the issue of possession of contraband and did not address the charge of lying or Fullwood's retaliation claim. Even if the proceeding were res

judicata, it would only be as to the possession of contraband charge.

Even as to the possession of contraband charge, the Article 78 determination only held that Fullwood, as the grievant, could possess grievant documents under 4040.  The Article 78 proceeding never addressed the particular issue that departmental regulations required that requests for grievance investigation reports be brought via the proper channels, *i.e.*, via FOIL.  Here, Fullwood did not obtain the grievance investigation report through the proper channels, and the document was contraband.  This issue was not addressed in the Article 78 proceeding.  Where key issues related to the contraband charge were not fully litigated in the Article 78 proceeding, the decision in the Article 78 proceeding is not res judicata as to this Court on the issues before the Court.

Accordingly, the Court will grant defendants' motion for summary judgment.  Fullwood's complaint fails to state a constitutional claim when construing all facts in the light most favorable to Fullwood.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 9th day of January, 2007.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court